People v McGrier (2022 NY Slip Op 02958)





People v McGrier


2022 NY Slip Op 02958


Decided on May 03, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 03, 2022

Before: Renwick, J.P., Kapnick, Friedman, Rodriguez, Pitt, JJ. 


Ind. No. 3022/17 Appeal No. 15842 Case No. 2019-1438 

[*1]The People of the State of New York, Respondent,
v
Donald McGrier, Defendant-Appellant.


Caprice R. Jenerson, Office of the Appellate Defender, New York (Joseph M. Nursey of counsel) and Weil Gotshal & Manges LLP, New York (Joshua M. Glasser of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Jennifer Westphal of counsel), for respondent.



Judgment, Supreme Court, New York County (Arlene D. Goldberg, J.), rendered September 12, 2018, as amended November 1, 2018, convicting defendant, after a jury trial, of attempted assault in the first degree and attempted gang assault in the first degree, and sentencing him to concurrent terms of five years, unanimously affirmed.
The court correctly declined to submit assault in the third degree as a lesser included offense of assault in the first degree and gang assault in the first degree, because the lesser charge was not supported by a reasonable view of the evidence, viewed most favorably to defendant (see People v Rivera, 23 NY3d 112, 124 [2014]). The key difference between these offenses is that both higher-level offenses require an intent to cause "serious physical injury" rather than just "physical injury," and first-degree assault additionally requires use of a "dangerous instrument" (Penal Law §§ 10.00[9], [10], [13]; 120.07;120.10[1]). Eyewitness testimony, some of which was corroborated by a videotape, established that defendant repeatedly hit the fallen victim in the face with a belt that had a sharp buckle, as defendant and his accomplices beat and kicked the victim, and there was no reasonable view to the contrary. Likewise, there was no reasonable view of the evidence that the belt and buckle did not constitute a dangerous instrument in the manner in which it was used (see People v Curtis, 89 NY2d 1003, 1004 [1997]), or that defendant intended anything less than serious physical injury (see People v White, 29 AD3d 457, 458 [1st Dept 2006], lv denied 7 NY3d 819 [2006]).
The court properly denied defendant's motion to suppress a showup conducted in close geographic and temporal proximity to the crime. Although a police officer urged the identifying eyewitness to cooperate and take part in identification procedures, the officer made it clear that the witness should only make an identification if he actually recognized someone. The fact that officers shined flashlights toward the general area in which defendant and other suspects were standing, in response to the witness's complaint of difficulty in seeing, did not render the identification unduly suggestive, and "the overall effect of the allegedly suggestive circumstances was not significantly greater than what is inherent in any showup" (People v Brujan, 104 AD3d 481, 482 [1st Dept 2013], lv denied 21 NY3d 1014 [2013]).
The court providently exercised its discretion in admitting evidence of an experiment conducted by the People's investigator regarding color distortion in videotapes. Demonstrations and experiments are admissible, in the court's discretion, provided they are relevant, which is measured principally by the similarity between the conditions under which the experiment or demonstration was performed and those that existed at the time of the event at issue (People v Cohen, 50 NY2d 908, 910 [1980], cert denied 461 US 930 [1983]). A videotape of the crime showed the [*2]man identified as defendant wearing what appears to be a gray sweatshirt, although he was wearing a black sweatshirt when arrested immediately thereafter. The experiment, accompanied by expert testimony, demonstrated that an infrared camera could cause a distortion of color that would explain this discrepancy. The experiment used the same cameras, at the same location and time of day as the surveillance video. Although it did not use the same sweatshirt as had been worn by defendant, that sweatshirt was unavailable and it was made clear to the jury that the sweatshirts could have been made of different materials. Under the circumstances, we find that these distinctions should go to weight and not admissibility (see e.g. People v Pierce, 270 AD2d 94 [1st Dept 2000], lv denied 95 NY2d 837 [2000]; People v Mariner, 147 AD2d 659, 660 [2d Dept 1989], lv denied 74 NY2d 666 [1989]). Defendant did not preserve his claim that the expert testimony should not have been admitted, and we decline to review it in the interest of justice. As an alternative holding, we reject it on the merits.
We perceive no basis for reducing the sentence.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 3, 2022